Maria D. TAPIA, Plaintiff–Appellee,

v.

CITY OF GREENWOOD, Robert P. Harold, Robert L. Dine, and James W. Cutrell, in their official capacities as police officers of the City of Greenwood, Defendants–Appellants.

Nos. 90–3477, 91–1643.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 1991.

Decided June 4, 1992.

Rehearing and Rehearing In Banc
Denied July 21, 1992.

Douglass R. Shortridge, Indianapolis, Ind. (argued), for plaintiff-appellee.

William W. Kurnik (argued), Kurnick, Cipolla, Stephenson, Barasha & O'Dell, Arlington Heights, Ill., Caren L. Pollack, Kenneth Collier–Magar, Stephenson & Kurnik, Indianapolis, Ind., Jo A. Woods, Greenwood, Ind., Richard S. Ewing, Stewart & Irwin, Indianapolis, Ind., for defendants-appellants.

Before WOOD, Jr.,* MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

On a winter evening in 1988, police officers of the small Indiana city of Greenwood entered Maria Tapia's home without a search warrant. Two days before the search, the Greenwood police had received information that Ms. Tapia's nephew, who was wanted on a fugitive warrant for murder, was headed to Greenwood to attend a funeral. On the day of the search, the nephew's car was located near Ms. Tapia's home. Greenwood's Special Weapons and Tactics Team ("SWAT Team") was called into action. At the telephoned request of a Greenwood police officer, Ms. Tapia opened her garage door and left the residence before the SWAT Team entered her home. As the SWAT Team discovered, Ms. Tapia's nephew was not in her home.

Thereafter, Ms. Tapia brought suit against the City of Greenwood and several police officers, individually and in their official capacities, pursuant to 42 U.S.C. § 1983, alleging that the Greenwood police violated her fourth and fourteenth amendment rights by carrying out an unreasonable search and seizure. She claimed that she was ordered to come out of her house, forcefully pulled out of the garage, pushed

---

* Judge Wood, Jr., assumed senior status on January 16, 1992, which was after oral argument in this case.

into a police car and interrogated, verbally abused and threatened with arrest, and that the police damaged her home.[1] Ms. Tapia asserted that the City failed to train the police officers with regard to warrantless searches, and that the City had no policies or regulations for such searches.

The jury returned a verdict against the City and police officers Robert Harold, Robert Dine and James Cutrell in their official capacities, and awarded Ms. Tapia $200,000 in damages. The defendants appeal the district court's denial of their motions for a judgment notwithstanding the verdict and for a new trial.

In reviewing a district court's refusal to grant a judgment notwithstanding the verdict (j.n.o.v.), we apply the same standard as the court below. *Commercial Credit Equipment Corp. v. Stamps*, 920 F.2d 1361, 1365 (7th Cir.1990). The standard for determining whether a j.n.o.v. should be granted is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed. *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1295 (7th Cir.1989); *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1307 (7th Cir.1985). In reviewing the district court's denial of a j.n.o.v., we must review the record to ensure that sufficient evidence exists to support the verdict. *Id.*

The district court has great discretion in determining whether to grant a new trial. *Forrester v. White*, 846 F.2d 29, 31 (7th Cir.1988). In determining whether a new trial is warranted, the district judge must decide if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party. *Id.* Upon review, the district judge's denial of a new trial will be overturned where there has been a clear abuse of discretion. *Id.*

Ms. Tapia's complaint against the City and the police officers in their official capacity operates as a claim against the City. *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986); *see Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985). To state a claim for municipal liability under § 1983, the plaintiff must establish that the alleged constitutional deprivation was pursuant to an "official policy" of the municipality. *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Sims v. Mulcahy*, 902 F.2d 524, 541 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990); *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir.1990). The plaintiff must also demonstrate that there is a direct causal link between the municipal policy and the constitutional deprivation. *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Tuttle*, 471 U.S. at 826, 105 S.Ct. at 2436; *Sims*, 902 F.2d at 542; *Rascon*, 803 F.2d at 273. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributable to a municipal policymaker." *Tuttle*, 471 U.S. at 823–24, 105 S.Ct. at 2436.

Where a city's failure to train its police officers in a relevant respect evidences a 'deliberate indifference' to the rights of persons with whom the police come into contact, such an inadequacy can be thought of as city "policy or custom" that is actionable under § 1983. *Harris*, 489 U.S. at 389, 109 S.Ct. at 1205; *Erwin*, 872 F.2d at 1297–98. "It may happen that ... the need for enhanced training is so obvious, and the inadequacy of training is so likely to result in the violation of constitutional rights, that a jury could reasonably attribute to the policymakers a deliberate indifference to those training needs." *Erwin*, 872 F.2d at 1298; *Harris*, 489 U.S. at 390, 109 S.Ct. at 1204–05. In such a case, the failure to offer proper training consti-

---

1. The issues of consent to search and exigent circumstances are not before us in this appeal.

tutes a policy for which a city is liable when improper training actually imposes injury. *Erwin,* 872 F.2d at 1298; *Harris,* 489 U.S. at 390, 109 S.Ct. at 1205.

In attempting to prove inadequate training and deliberate indifference, Ms. Tapia requested from the defendants "[a]ll documents issued by the City of Greenwood, or any of its agencies, including, but not limited to, its police department and its City Attorney's office, concerning the standards, policies, practices or regulations in effect on February 14, 1988, which are to be used in determining when police officers can legally and justifiably enter a private residence and dwelling house." The City responded that "[n]o written policies exist which mandate the circumstances under which a police officer may legally enter a private residence. Officers are instructed to adhere to state law in this regard." Ms. Tapia also requested any documents concerning the makeup and training of the SWAT Team, but the City replied that no such documents existed. These requests for admissions and responses were read to the jury.

Ms. Tapia presented a general order issued by the City's police department prior to the search concerning the purposes, responsibilities and procedures for the SWAT Team. The order did not directly discuss the procedures for warrantless searches.[2] By way of deposition, the Chief of Police stated that in certain circumstances officers were permitted to enter a home without a search warrant. A police officer testified that he attended the Federal Bureau of Investigation National Academy for local and state officers at which he was trained about search warrant procedures. Another officer testified that he was trained at the Indiana Law Enforcement Academy regarding search warrant procedures, that he attended courses at the Academy from time to time, that he re-ceived SWAT Team training, and that he attended a civil liability course involving citizens' rights and the liability of police officers. The officer's training file, which indicated that he also attended Police Training School at the Greenwood Police Department, was admitted into evidence.

The defendants argue that the evidence is insufficient to establish that the City had a constitutionally deficient program of training police officers with regard to search warrant procedures. We agree.

■ In Indiana, police officer training is governed by state law. Ms. Tapia offered no evidence to indicate that the City failed to adhere to the minimum standards for training police officers under Indiana law. *See* IC 5–2–1–1 (1984); IC 5–2–1–9 (1987); IC 5–2–8–2 (1989);[3] 250 IAC *et seq.* (1988). Moreover, Ms. Tapia failed to demonstrate that the City is required to have written material outlining the procedures for warrantless searches. The evidence established that the police officers received basic training at law enforcement academies and additional training regarding search warrants, and that the City requires officers to adhere to state law in executing warrantless searches. From this evidence, we cannot say that "the need for enhanced training [was] so obvious, and the inadequacy of training [was] so likely to result in the violation of constitutional rights, that a jury could reasonably attribute to the policymakers a deliberate indifference to those training needs." *Erwin,* 872 F.2d at 1298. Therefore, the SWAT Team's unconstitutional entry into Ms. Tapia's apartment cannot be said to have been pursuant to an "official policy" of the City. As we noted, proof of a single incident of unconstitutional activity is not sufficient to impose liability unless proof of the incident includes proof that it was caused by an existing,

---

**2.** The execution of search warrants is by no means an exclusive function of the SWAT Team; therefore, no distinction should be drawn between basic law enforcement training and SWAT Team training with regard to the relevant procedures. At oral argument, it was noted that half of the City's police officers were members of the SWAT Team.

**3.** These sections provide for the establishment of minimum standards in law enforcement training and local law enforcement continuing education programs. IC 5–2–8–2 was amended by Ind.P.L. 26–1990, Sᴇᴄ 4.

unconstitutional municipal policy. *Tuttle*, 471 U.S. at 823–24, 105 S.Ct. at 2436. Therefore, the evidence is insufficient to support the jury's verdict.[4]

The judgment of the district court is REVERSED and we remand to the district court to enter a judgment notwithstanding the verdict in favor of the defendants.

**4.** We need not address the defendants' argument that the district court erred in excluding evidence of exigent circumstances.