**Steven Lee ELLIS, Plaintiff,**

v.

**CITY OF INDIANAPOLIS, and Peter A. Wynalda, individually, and in his official capacity as a police officer of the City of Indianapolis, Defendant.**

**No. IP 88–78–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 24, 1992.

Douglas R. Shortridge, Indianapolis, Ind., for plaintiff.

Mary Ann Oldham, City–County Legal Div., Indianapolis, Ind., for defendant.

MEMORANDUM ENTRY DISCUSSING ORDER DISMISSING CLAIMS AGAINST CITY OF INDIANAPOLIS AND AGAINST PETER A. WYNALDA IN HIS OFFICIAL CAPACITY AND DISCUSSING JUDGMENT IN FAVOR OF PETER A. WYNALDA IN HIS INDIVIDUAL CAPACITY

TINDER, District Judge.

Plaintiff's Second Amended Complaint purportedly stated claims under 42 U.S.C. § 1983 against the City of Indianapolis and one of its police officers. The City argued that Plaintiff failed to allege facts sufficient to state a claim against the City and moved to dismiss all claims against it. Arguing that he was immune from liability, Defendant Wynalda moved for a summary judgment of the § 1983 claim brought against him in his individual capacity. Plaintiff countered with a response to Wynalda's Motion for Summary Judgment, citing to Wynalda's deposition and devising

arguments from that evidence. For the reasons discussed below, the Court finds that the City's Motion to Dismiss should be granted and that there is no genuine issue of material fact regarding Wynalda's Motion for Summary Judgment and that Wynalda's Motion should be granted.

## BACKGROUND AND FINDINGS OF FACT[1]

Indianapolis Police Department Officer Peter Wynalda received a call about seven a.m. on September 7, 1986 to investigate a signal from an alarm at a drug store located at 2841 South Shelby Street. At the store, Wynalda met Thomas Meier, a pharmacist who also responded to the alarm. Meier let Wynalda in the store through the back door; both men observed that the pharmacy area had been ransacked.

Wynalda drew his sidearm and began searching the premises. He discovered that a hole had been broken through an outer wall of the building near ground level. The hole apparently had been broken through the brick wall with some substantial implement. Wynalda peered through the hole and observed a set of legs walking away from the pharmacy building. The officer booked through the store and circled around outside to the point where he observed the retreating legs.

Once outside, Wynalda observed Ellis, the Plaintiff, walking through a courtyard adjacent the drug store. In his left hand Ellis carried a large red plastic mesh bag (the kind used to hold grapefruit) full of drug bottles and packages; Ellis held a leather jacket in his right hand. Wynalda called for a back up though the radio system carried on his person. Wynalda moved to intercept Ellis and shouted at him to halt. Ellis recognized Wynalda as a police officer and saw that Wynalda held a revolver. Ellis heard Wynalda yell but purportedly was not sure whether Wynalda was speaking to him or someone else in the vacant courtyard.

Wynalda held his sidearm in his right hand as he approached Ellis; Wynalda ordered Ellis to place his hands against the wall. Ellis and Wynalda came within a few feet of each other and Wynalda used his left hand in an attempt to restrain Ellis. Wynalda did not have an opportunity to frisk Ellis or to observe whether he held any other items on his person. Although Wynalda and Meier swore that Wynalda's gesture initiated a physical confrontation during which Ellis struck Wynalda with the bag and then punched him, Ellis testified that they were never close enough for direct physical contact. Taking the facts most favorable to Ellis, the Court finds that there was no direct physical "fighting" between Wynalda and Ellis. Notwithstanding, when the parties were four or five feet apart Ellis "tossed" the bag of drugs at Wynalda "in an arc" for "hang time" to block Wynalda's view while Ellis made a break for it.

The bag struck Wynalda and disoriented him while Ellis bolted out of the courtyard. Wynalda regained his balance and shouted at Ellis to halt; Ellis streaked away unabated and Wynalda fired a round into Ellis' buttock.

## DISCUSSION AND CONCLUSIONS OF LAW

### I. DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

#### A. *Section 1983 Actions Against Municipal Entities*

There is no "respondeat superior" concept that imputes a police officer's § 1983 liability to his or her municipal employer. *Riordan v. Kempiners*, 831 F.2d 690 (7th Cir.1987); *Brown v. Patterson*, 823 F.2d 167 (7th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 117 (1987). An employer is liable under § 1983 only if the employer directed the specific activity of an officer or had a policy or custom causing the constitutional deprivation. *Gray v. Lacke*, 885 F.2d 399 (7th

---

1. These facts are either undisputed or are those presented by Ellis, the non-movant. The facts are derived from Ellis' and Wynalda's deposition testimony and Meier's testimony at a previous trial as provided in a certified copy of that transcript.

Cir.1989). A municipal entity may be liable for damages caused by a violation of a person's civil rights if the alleged constitutional deprivation was pursuant to an "official policy" of the municipality. *Pembaur v. Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Tapia v. City of Greenwood,* 965 F.2d 336, 338 (7th Cir.1992); *Sims v. Mulcahy,* 902 F.2d 524, 541 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). A plaintiff must demonstrate that there is a direct causal link between the municipal policy and the constitutional deprivation. *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Oklahoma City v. Tuttle,* 471 U.S. 808, 826, 105 S.Ct. 2427, 2438, 85 L.Ed.2d 791 (1985).

■ Plaintiff asserted that Wynalda deprived Ellis of his rights because the City failed to train Wynalda properly in the use of his weapon. If the need for training is so obvious and the inadequacy of training is so likely to result in a violation of constitutional rights, then the municipal entity may demonstrate a deliberate indifference to rights by failing to provide such training; this kind of deliberate indifference may be thought of as the municipal entity's policy or custom and may provide the basis for § 1983 liability. *Harris,* 489 U.S. at 389, 109 S.Ct. at 1205; *Tapia,* 965 F.2d 336, 338; *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1297–98 (7th Cir.1989). Plainly, a claim of this nature is very difficult to prove; the law is clear that "proof of a single incident of unconstitutional activity is not sufficient to impose liability unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Tuttle,* 471 U.S. at 823–24, 105 S.Ct. at 2436–37; *Tapia,* 965 F.2d 336, 338.

### B. *Pleading Requirements for § 1983 Claim Against Municipal Entity*

The Seventh Circuit has held consistently that a conclusory allegation that a police officer's conduct was "pursuant to an official policy or custom" is insufficient to state a § 1983 claim against a municipal entity. *Hossman v. Blunk,* 784 F.2d 793, 797 (7th Cir.1986); *Rogers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 202 (7th Cir. 1985); *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985); *see Gibson v. City of Chicago,* 910 F.2d 1510, 1523 (7th Cir.1990); *Ford v. City of Rockford,* 770 F.Supp. 402, 403 (N.D.Ill.1990); *Landstrom v. Illinois Dep't of Children and Family Servs.,* 699 F.Supp. 1270, 1276 (N.D.Ill.1988), *aff'd,* 892 F.2d 670 (7th Cir. 1990); *see also Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991) (referring to *Strauss* and the "heightened pleading and substantiation required in certain civil rights cases").

■ A party must state a claim to give notice of what the claim is *and* "the grounds upon which it rests." Fed. R.Civ.P. 8. Because factual allegations of a single incident of unconstitutional conduct are insufficient to establish a "custom or policy" causing that conduct, a well-pleaded complaint requires other *factual* allegations—the "grounds"—supporting the existence of such an official policy. *Rogers,* 771 F.2d at 202; *Strauss,* 760 F.2d at 768. "The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of Section 1983 liability devoid of any well-pleaded facts." *Strauss,* 760 F.2d at 767.

■ Given that proof of a single instance of unconstitutional conduct by a municipal employee is insufficient to impose liability against the municipal entity, it is equally plain that *allegations* of a single instance is insufficient to state a claim. *Rogers,* 771 F.2d at 202; *Strauss,* 760 F.2d at 767. Thus, a plaintiff cannot rely solely on factual allegations regarding his or her own instance of unconstitutional treatment to state a claim requiring proof of an official policy or custom. *Rogers,* 771 F.2d at 202; *Strauss,* 760 F.2d at 768. Similarly, proof or allegation of a single instance is insufficient to state a § 1983 claim premised upon a failure to provide "proper" training. *Tapia,* 965 F.2d 336, 338–340; *Rodriguez v. Avita,* 871 F.2d 552 (5th Cir. 1989).

### C. Plaintiff's Second Amended Complaint Fails to Provide Allegations Sufficient to State Cognizable Claim Against The City

■ Plaintiff provided a summary of his claims against the City in the opening paragraphs of his Second Amended Complaint:

3. The City of Indianapolis is liable to Plaintiff because of the inadequacy of its police training which amounts to a deliberate indifference to the rights of the persons with whom the police, including these defendants [sic], come into contact.

4. This policy of indifference amounts to a custom and practice of encouraging the use of excessive force. By failing to investigate and discipline police officers involved in alleged brutality, and by failing to institute a proper method to review and discipline police officers, the City of Indianapolis has adopted a policy of calculated indifference to the Constitutional Rights of citizens in this community. The court should require proper and appropriate training and review and award Plaintiff actual and punitive damages.

(Second Am.Compl. ¶¶ 3–4.) The balance of the allegations in the Second Amended Complaint failed to provide any factual basis supporting these conclusory "boiler plate" assertions. As with the complaint in the *Strauss* case, Plaintiff alleged facts related to his arrest only. The legal conclusion that Wynalda's conduct was pursuant to an official policy or custom was "wholly devoid of facts," which is insufficient to state a § 1983 claim against a municipal entity. *Rogers,* 771 F.2d at 202; *Strauss,* 760 F.2d at 767; *Briscoe v. La-Hue,* 663 F.2d 713, 723 (7th Cir.1981), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983). As the court stated in *Strauss,* "[n]othing in the complaint suggests that the incident was other than an isolated one unrelated to municipal policy, which leads us to affirm the dismissal of the complaint as we did in *Briscoe....*" 760 F.2d at 767.

Seventh Circuit guidance is clear that this kind of complaint, devoid of well-pleaded facts, must be dismissed for failure to state a claim. The Court GRANTS the Defendants' Motion for Partial Dismissal and will dismiss the § 1983 claims against the City in an accompanying Order. The Order will dismiss the claim for damages stated in Count I and the claim for injunctive relief stated in Count II; both claims are necessarily premised upon a finding that the City is liable under § 1983—a finding not allowed under the deficient Second Amended Complaint.[2]

## II. DEFENDANT WYNALDA'S MOTION FOR SUMMARY JUDGMENT

Defendant Wynalda filed a Motion for Summary Judgment, which moved the Court to enter a judgment in Wynalda's favor on Plaintiff's § 1983 claim brought against Wynalda in his individual capacity. Wynalda argued that he fell within the scope of the qualified immunity public officials enjoy against certain kinds of § 1983 claims.

### A. Application of Defense of Qualified Immunity to Claim that Police Officer Unreasonably Used Deadly Force

■ When a government official is performing discretionary duties, the official is generally shielded from liability when the person's conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. [I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v.*

---

**2.** The following section of this Entry concludes that officer Wynalda is entitled to immunity for his conduct during the incident with Ellis. That conclusion, from which the Court will enter a Judgment in favor of Wynalda, would effectively moot the claims against the City because the City would be entitled to a favorable judgment also. Notwithstanding, Defendants' Motion for Partial Dismissal is well met and provides an alternative and superior basis for dismissing the claims against the City.

*Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The Seventh Circuit requires that the law be "clear in relation to the specific facts confronting the public official when he acted." *Conner v. Reinhard*, 847 F.2d 384, 388 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988).

■■■ At the time of the incident at issue in this matter the use of deadly force to stop a fleeing suspect was plainly within the clear contours of Fourth Amendment jurisprudence. After the Supreme Court's decisions in *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) and *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989), the law was clear that using the deadly force of a firearm is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Adams v. St. Lucie County Sheriff's Dep't*, 962 F.2d 1563, 1570 (11th Cir.1992); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir.1991). The nature and the quality of the intrusion on the individual's Fourth Amendment interests must be balanced against the countervailing government interests. *Garner*, 471 U.S. at 8, 105 S.Ct. at 1699; *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). The question is whether the totality of the circumstances justified the particular *type* of seizure—"how" the seizure was effected. *Garner*, 471 U.S. at 8, 105 S.Ct. at 1699; *Connor*, 490 U.S. at 396, 109 S.Ct. at 1872. A court must recognize the split-second judgments made by a reasonable person under the circumstances, because the " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872; *Curnow*, 952 F.2d at 325; *Quezada v. County of Bernalillo*, 944 F.2d 710, 717 (10th Cir.1991).

Whether Wynalda is protected by qualified immunity depends on the facts of what he actually did in light of the objective facts of the situation, because Ellis' general right to be free from an unreasonable use of force was clearly established. The focus is on the "objective legal reasonableness" of Wynalda's use of his firearm. *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039; *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739; *Juriss v. McGowan*, 957 F.2d 345, 348 (7th Cir.1992); *Zuchel v. Spinharney*, 890 F.2d 273, 274–75 (10th Cir.1989). As the Seventh Circuit stated recently in *Juriss*, "The relevant inquiry is whether a reasonable officer could have believed the [use of force] was constitutional 'in light of clearly established law and the information [Wynalda] possessed' at the time of the incident." 957 F.2d at 348–49 (*quoting Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040). Although the constitutional standard for deadly force was clear, Wynalda is entitled to qualified immunity if "it would not have been apparent to a reasonable official in [his] position that the seizure was 'unreasonable' and thus violative of the Fourth Amendment." *Adams*, 962 F.2d at 1571. If, based on the undisputed facts of the incident, a reasonable officer in Wynalda's position could have believed use of deadly force against Ellis was constitutional, then Wynalda is entitled to immunity for his conduct. The Court must look at the undisputed facts to determine the "facts of which [Wynalda] was aware" at the time he fired at Ellis. *Juriss*, 957 F.2d at 349.

Federal courts have provided the contours of the limits on police use of deadly force. At the time Wynalda shot Ellis, an officer could use deadly force to effect the arrest of a fleeing felon if, under all the circumstances, he reasonably believed such force was necessary to protect himself or others from death or serious physical harm. *Garner*, 471 U.S. at 11, 105 S.Ct. at 1701; *Curnow*, 952 F.2d at 325; *Ting v. United States*, 927 F.2d 1504 (9th Cir.1991); *Fitzgerald v. Patrick*, 927 F.2d 1037, 1039 (8th Cir.1991) (per curiam); *Sherrod v. Berry*, 856 F.2d 802 (7th Cir.1988) (en banc) (established "objective reasonableness" standard for fourth amendment excessive force cases); *Ford v. Childers*, 855 F.2d 1271, 1274 (7th Cir.1988) (en banc) (holding as matter of law that officer must have reasonably believed that armed bank rob-

ber presented sufficient danger); *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir. 1987). Conversely, "deadly force is inappropriate when 'the suspect poses no immediate threat to the officer and no threat to others.'" *Tom v. Voida*, 963 F.2d 952, 961 (7th Cir.1992) (*quoting Garner*, 471 U.S. at 11, 105 S.Ct. at 1701).[3]

The Supreme Court's decision in *Garner* made clear that a fleeing, non-dangerous felony suspect has a right to be free from the use of deadly force used merely to effect his or her capture. 471 U.S. at 11, 105 S.Ct. at 1701; *see Wright v. Whiddon*, 951 F.2d 297, 300 (11th Cir.1992) (distinguishing between standard for use of force between fleeing previously detained suspects and suspects not yet seized). An officer must determine "whether the suspect poses an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872; *Garner*, 471 U.S. at 8–9, 105 S.Ct. at 1699–1700. The Seventh Circuit stated the standard succinctly:

> According to the Supreme Court, while the use of deadly force is unreasonable if intended merely to prevent a felon's escape, such force is reasonable if, based on the facts and circumstances known to the officer at the time, the officer has "probable cause" to believe that the suspect poses a threat of serious physical harm to the officers or to others and, if feasible, warns the suspect. . . .

*Childers*, 855 F.2d at 1274.

### B. *Qualified Immunity Defense Applies to Wynalda's Conduct*

The question whether qualified immunity attaches to an officer's conduct is always one for the judge to decide. *Sim-*

kunas v. Tardi, 930 F.2d 1287, 1291 (7th Cir.1991); *Rakovich v. Wade*, 850 F.2d 1180, 1201–02 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *see also* 2 Sheldon H. Nahmod, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION § 8.08, at 136–39 (1991). Whether qualified immunity is properly resolved by summary judgment is different from the question whether the underlying claim is ripe for a summary judgment. *Adams*, 962 F.2d at 1577; *Auriemma v. Rice*, 910 F.2d 1449, 1452 (7th Cir.1990) (en banc), *cert. denied*, — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). Summary judgment is a proper posture from which to decide whether qualified immunity exists because the objective inquiry is a legal question. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2739; *Auriemma*, 910 F.2d at 1452–53; *Rakovich*, 850 F.2d at 1205.

In this matter, the parties do not dispute the relevant facts known to Wynalda at the time of the incident. The Court must construe those facts most favorably to Ellis, the non-moving party. To determine whether qualified immunity exists this Court needs to examine the undisputed facts to determine the question of law whether an officer in Wynalda's position "*could* have believed that [his] conduct was constitutional 'in light of clearly established law and the information [he] possessed' at the time the incident occurred." *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992) (emphasis added). The pivotal question in this matter is whether or not a reasonable person in Wynalda's position reasonably could have believed that Ellis presented a threat of serious harm to Wynalda or others.

---

**3.** One of Wynalda's arguments misunderstood the proper legal standard applicable to his use of deadly force. Wynalda argued that *Klein v. Ryan*, 847 F.2d 368 (7th Cir.1988) and *Ellis v. State*, 553 N.E.2d 829 (Ind.1990) support his position that his use of force was consistent with applicable law. (Mem.Support Mot. Summ.J. at 9.) The *Klein* case considered whether an officer's use of deadly force, which occurred prior to the decision in *Garner*, violated the law clearly established at that time. The court applied the "fleeing felon" rule, which was provided by an Illinois statute and stated that an

officer could use deadly force to effect an arrest of a fleeing felon—even if the felon posed no danger. Of course, that rule was held unconstitutional by the United States Supreme Court in *Garner* and therefore the *Klein* case provides no guidance to this Court. *Palmer v. City of Decatur, Ill.*, 814 F.2d 426, 426–27 (7th Cir.1987); *Robinson v. Bibb*, 840 F.2d 349 (6th Cir.1989). Therefore, the Indiana statute relied upon by the Indiana Supreme Court in *Ellis* (Ind.Code Ann. § 35–41–3–3(b)(2) (Burns 1985)) is also contrary to *Garner* and cannot provide the proper standard of officer conduct.

The objective facts of the encounter between Wynalda and Ellis indicate a reasonable officer could have believed that Ellis posed a threat of serious harm to other persons. Wynalda had his handgun in his right hand since before the time that Ellis first saw him coming around the corner of the building. Even though Wynalda spoke directly to Ellis and placed his left hand toward Ellis, Ellis failed to stop moving. In fact, Ellis turned and tossed/swung the bag of drugs at Wynalda; regardless Ellis' intent in launching the bag, the bag in fact struck Wynalda on his left shoulder. A person in Wynalda's position, who had just been struck by an object "lofted" by a burglary suspect who refused to stop— even though Wynalda had his gun out of his holster—would have good reason to suspect that Ellis posed a danger to Wynalda and those he might encounter during his escape.

Wynalda did not have an opportunity to see whether Ellis had any weapons concealed on his person. Wynalda was aware, however, that Ellis must have used some kind of implement to gain access into the pharmacy through the outer wall. It would not be unreasonable for Wynalda to believe that Ellis harbored a firearm, blade or implement that could be used against Wynalda or some other person by chance passing by. A reasonable officer, who had just been struck by a large bag of drugs, would likely believe that the perpetrator would resort to future violence to facilitate his escape. Moreover, Wynalda had called for backup support and was aware that these officers may be approaching unaware of the potential danger heading their way.

Thus, a reasonable officer in Wynalda's position plainly could have believed that a gun shot would be necessary to prevent Ellis from causing serious bodily harm to Wynalda or others. The facts of this case distinguish it from a situation in which a person merely turns tail and flees without first to showing a willingness to use direct physical force to make the escape. Because Wynalda was struck by surprise by the bag and because he was not aware whether Ellis possessed more dangerous weapons, reasonable officers could differ regarding whether Ellis presented a threat of future injury. If reasonable officers could differ, then by definition a reasonable officer could believe that use of deadly force was constitutionally permissible. In sum, Wynalda is entitled to immunity against liability from Ellis' excessive force claim and therefore Wynalda's Motion for Summary Judgment is GRANTED.