**Steven Lee ELLIS, Plaintiff–Appellant,**

v.

**Peter A. WYNALDA, in his individual capacity as a police officer for the City of Indianapolis, Defendant–Appellee.**

No. 92–3035.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1993.

Decided July 15, 1993.

---

**10.** The bankruptcy court expressly relied on *Marengo* in deciding to reform the promissory notes.

(Bankr.R. 23, at 3–4.)

Richard A. Waples, Indianapolis, IN (argued), for Steven Lee Ellis.

MaryAnn G. Oldham, City–County Legal Div., Indianapolis, IN (argued), for Peter A. Wynalda.

Before BAUER, Chief Judge, and FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

On September 7, 1986, Steven Ellis broke into an unoccupied pharmacy in Indianapolis and stole drugs and money. Officer Wynalda, called to the scene after Ellis tripped the burglar alarm, approached Ellis in the building's courtyard and ordered him to stop. When Ellis tossed the bag holding the drugs at the officer and ran, Wynalda shot Ellis in the back. The district court granted Wynalda qualified immunity from Ellis' excessive force claim, 800 F.Supp. 733, and Ellis appeals. We reverse.

## I.

■ At this stage, we accept Ellis' version of the facts and make all inferences favorable to him.[1] Ellis burglarized the Gee Pharmacy at approximately 7:00 a.m. He entered the vacant building beside the pharmacy and used a sledgehammer to break through the adjoining wall. Then he returned the sledgehammer to his car and went back to the drugstore. Inside, he routed through drawers and cabinets, inadvertently triggering the burglar alarm. Ellis took plastic vials and containers of drugs and a cigar box holding $130 in paper currency. After stuffing his loot into a mesh produce bag, Ellis crawled out the hole, exiting the way he entered.

Meanwhile, Officer Wynalda answered a call for a possible burglary at the pharmacy. A store employee arrived shortly and let the police officer in through the back door. Seeing the considerable disarray, Wynalda drew his weapon, keeping it pointed at the ground, and searched for an intruder or signs of a break-in. He discovered the hole in the wall, knelt down, and observed a pair of legs walking out the back door of the adjoining store. Officer Wynalda ran out the back door of the pharmacy and through the parking lot. He observed Ellis walking away from the next building. Ellis was wearing pants and a sleeveless shirt and was carrying a jacket in one hand and the mesh bag in the other.

Wynalda approached and ordered Ellis to stop. Instead, Ellis kept walking and the two men met at the corner of the courtyard. Wynalda again told Ellis to stop and Ellis turned to face him. Unexpectedly, he lofted his jacket and the mesh bag filled with plastic vials toward the officer and ran away. The lightweight bag struck Wynalda's shoulder. He shouted for Ellis to stop and then shot him once in the lower back. Ellis fell to the ground and was apprehended.

## II.

■ We review the decision to grant summary judgment *de novo*. *Doe v. Allied Signal Corp.*, 925 F.2d 1007, 1008 (7th Cir. 1991). Under the doctrine of qualified immunity, police officers are "shield[ed] ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The appropriateness of qualified immunity in a particular case should be decided

---

1. Wynalda argues that the disposition of Ellis' criminal proceeding prevents the court from adopting Ellis' version of the facts under the doctrine of collateral estoppel. Collateral estoppel is an affirmative defense and was not asserted by the defendant in his answer or at any time in the district court. The argument, therefore, has been waived. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir.1992).

Even if Wynalda had properly asserted the defense, the jury verdict in Ellis' criminal case does not dispose of the issue in this case, nor does it express a clear choice between Wynalda's and Ellis' descriptions of their physical encounter. Ellis was convicted of misdemeanor battery, as well as assorted crimes irrelevant to our inquiry. Misdemeanor battery in Indiana is any unauthorized touching. Under Ellis' version of the facts, he tossed a lightweight bag which struck Wynalda. That is an unauthorized touching. Under Wynalda's version, Ellis repeatedly swung a midweight bag, striking him and knocking him off balance, and shoved him backwards. That also would be a misdemeanor battery, because it caused no injury. At least on this record, there is no way to tell which version the jury in the criminal case believed from their verdict. The Indiana Supreme Court, as noted by the district judge, relied on an Indiana statute permitting officers to shoot any fleeing felony in order to effect an arrest, an unconstitutional rule after *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694 85 L.Ed.2d 1 (1985). Its factual summ— cluding the assumption th⸱⸱ swung the bag to strike Wy sive because there is no ap conclusion.

as early as possible, in order to fulfill the policy objective of protecting police officers from the burdens of litigation as well as civil damages. *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). Following *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), we analyze all excessive force claims stemming from an arrest or other seizure by the police under a Fourth Amendment "objective reasonableness" standard. We must determine "whether, at the time of the alleged seizure, a reasonable officer could have believed that [the defendant officer's] conduct was constitutional 'in light of the clearly established law and the information [the officer] possessed' at the time the incident occurred." *McDonald v. Haskins,* 966 F.2d 292, 293 (7th Cir.1992) (citations omitted).

█ The law against using excessive force to effect an arrest was well established in 1986 when the incident took place. The issue is whether the effect of that law was clear in relation to the specific facts confronting Wynalda when he shot the plaintiff. The Supreme Court, in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), restricted the use of deadly force to seizures of fleeing felons who present a danger to the officer or others or who have committed a violent crime. This restriction marks the appropriate balance between the intrusion on the suspect's Fourth Amendment rights and the importance of "the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871.

### III.

█ We must determine whether the district court correctly found qualified immunity to be appropriate in this case.[2] At the time Wynalda fired his gun, a reasonable officer in Wynalda's place would believe that Ellis had committed a felony and that he might evade arrest.[3] Qualified immunity should be granted if a reasonable officer, facing the same situation, could have believed that deadly force was necessary to protect himself or others from death or serious physical harm. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871; *Garner,* 471 U.S. at 11, 105 S.Ct. at 1701. The district court found that Wynalda could have reasonably believed that Ellis posed a threat of serious harm to others based on his willingness to toss an object at a uniformed police officer whose gun is drawn and his apparent ability to knock a large hole in a cement wall.

Unlike the district court, we are unable to conclude that these perceptions of Ellis justify the grant of qualified immunity. Wynalda observed Ellis in clear morning light while he approached Ellis in the courtyard. Although he did not have the opportunity to frisk Ellis for weapons, Ellis' clothing would make it difficult to conceal a weapon, especially one

---

**2.** The plaintiff argues that qualified immunity should never apply in excessive force cases, because of the inherent contradiction between excessive or unreasonable force and the reasonable use of such force. First, the plaintiff has waived this argument by failing to present it in the district court. *Cooper,* 969 F.2d at 371. Second, we disagree that qualified immunity has no place in an excessive force context. The doctrine is valuable in order to describe the unusual "burden" on the non-moving party at the summary judgment stage. While ordinarily a court grants summary judgment only if no reasonable jury could find for the non-moving party, a court grants summary judgment based on qualified immunity if a reasonable officer could find the defendant's actions justified. When reasonable minds could differ, in the typical summary judgment decision the balance tips in favor of the nonmovant while in the qualified immunity context the balance favors the movant. *See Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) ("[T]he court should ask whether the agents acted reasonably under the settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed ... after the fact."). Therefore, the doctrine of qualified immunity still serves an important purpose in cases of alleged excessive force.

**3.** The plaintiff argues that because Wynalda had called for backup and because Ellis was on foot, he could not reasonably think that Ellis would escape. Ellis was running down an alley open to the street, forty feet away from the officer when he was shot. Wynalda did not know where the second police officer was or how soon he would arrive, or if Ellis had a car nearby. We agree with the district court that Wynalda could reasonably believe that his action was necessary to prevent Ellis' escape. That does not, of course, resolve the issue of excessive force because, as Justice White put it in *Garner,* "[i]t is not better that all felony suspects die than that they escape." 471 U.S. at 11, 105 S.Ct. at 1701.

of the size necessary to knock a hole in a cement wall. While it was possible that Ellis carried a concealed weapon, as much as it is possible that every felon might be carrying a weapon, Wynalda had no particular reason to believe that Ellis was armed.

Furthermore, according to Ellis, he tossed a mesh bag weighing four or five pounds toward Wynalda in an arc, to distract the officer while he ran. That conduct, while risky and startling, is not the equivalent of menacing an officer with a weapon. If Wynalda feared that the bag might be heavy and might knock the gun from his hand or provide an opportunity for Ellis to draw a concealed weapon, he would have been justified in firing *at that moment,* but not after the lightweight bag fell to the ground without injuring him and Ellis had turned and run. In other words, if Wynalda had shot Ellis while Ellis was throwing the bag at him, that would have been permissible as the action of a reasonable officer facing a dangerous felon. Even if he shot Ellis after the bag had hit him but while he was still disoriented and off-balance, his action could be reasonable, because he would not know, for example, if Ellis was going to attack him or was reaching for a weapon. In this case, however, Wynalda was struck by the lightweight bag and then observed Ellis back away, turn and run. He could see and understand the situation; he bore no injury; Ellis presented no immediate threat and was not apparently armed. Even the bag he may have used as a weapon had been abandoned at the officer's feet.

When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity. Although Wynalda could have shot Ellis during their physical encounter, since a reasonable officer may have felt threatened, Wynalda had no reasonable fear of Ellis after he backed away and ran. If Ellis had threatened the officer with a weapon and then run off with the weapon, a reasonable officer in Wynalda's place could believe that Ellis created a danger to the community. Here, Ellis tossed a lightweight bag up toward the officer and then ran away, without even that makeshift weapon to endanger anyone. While Ellis' actions may seem foolish to the reasonable officer, they do not give rise to a reasonable belief that Ellis presented a threat of serious harm to the officer or others.

A jury, after settling factual disputes between the parties, may decide that the force used by Officer Wynalda was not excessive. According to Wynalda's account, Ellis repeatedly swung an object and struck him, a uniformed police officer whose gun was drawn. If that was the case, Wynalda might have reasonably concluded that Ellis was dangerous. Even under Wynalda's account, however, a jury could conclude that the immediate danger had passed by the time Wynalda fired, in which case the force would have been excessive. If Ellis' account is to be believed, Wynalda shot him in the back without any indication that he had committed a violent felony or was dangerous. That would make the force used to seize Ellis excessive under the Fourth Amendment. Therefore, while we do not foreclose the possibility that Wynalda did not use excessive force to seize Ellis, we believe that the case should be settled by a jury, based on whether a reasonable officer in Wynalda's place could believe that Ellis presented a danger to his safety or the safety of others. The order granting summary judgment to Wynalda is

REVERSED.

BAUER, Chief Judge, dissenting.

I respectfully dissent. On the uncontested facts of this case, I believe the police officer acted in an objectively reasonable manner.

In moments of crisis, men and women in whom we entrust the safety of our persons and property must make split second decisions. The trial judge, I believe, correctly analyzed the problem and concluded that the defendant did what a reasonable officer would have done under the same circumstances.

Having given these officers the training, the weapons and the mandate to protect us, I do not think it is appropriate to have their actions reviewed by a jury when a fleeing felon, who has already assaulted an officer, presents a potential danger to other officers

and the public at large. I would affirm the judgment of the district court.