In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1139

Victor R. McNair and Tre K. McNair,

Plaintiffs-Appellants,

v.

Sean Coffey,

Defendant-Appellee.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-C-163-S--John C. Shabaz, Chief Judge.


Argued November 1, 2000--Decided December 8, 2000


  Before Cudahy, Coffey, and Easterbrook, Circuit
Judges.

  Easterbrook, Circuit Judge.  A jury awarded
brothers Victor and Tre McNair $5,000 apiece to
compensate them for the fright and indignity they
suffered when officer Sean Coffey pulled over
their car and, with the aid of seven other
officers (a total of eight squad cars), arrested
them at gunpoint for the offense of not paying
parking tickets. The jury concluded that, by
treating these scofflaws as if they were armed
bank robbers apprehended after a high speed
chase, officer Coffey used excessive force and
thus violated the fourth amendment, as
interpreted in Graham v. Connor, 490 U.S. 386
(1989), and Lester v. Chicago, 830 F.2d 706 (7th
Cir. 1987).

   Taken in the light most favorable to the
verdict, as it must be, the evidence shows that
the McNairs were driving peaceably to church one
evening when officer Coffey put on his lights to
signal them to stop. Coffey had adequate reason
to do this: a check showed that the license plate
had been suspended for nonpayment of parking
fines. Although Coffey was not interested in this
offense but wanted instead to look into the
possibility of drugs, probable cause for the stop
was not undercut by Coffey's desire to
investigate a different offense. Whren v. United
States, 517 U.S. 806, 811-13 (1996). Driving in

a rough neighborhood, the McNairs were hesitant to stop on a poorly lighted street. So they did not immediately pull over but drove slowly to a well illuminated gas station, where they pulled off the road and waited for the police car. Officer Coffey meanwhile had radioed his dispatcher that a chase was in progress and called for armed backup. The McNairs stopped about a mile from the place where Coffey turned on the patrol car's flashing lights. The price of this delay was that the police treated the McNairs like desperadoes who had been firing tommy guns out the windows.

According to Coffey, this was a "high risk traffic stop"--not only because of the neighborhood but also because the McNairs did not stop immediately and the officer was not sure how many persons were in the car. Coffey's response was to crouch behind the door of his squad car, point a semiautomatic pistol at the McNairs, and demand over a loudspeaker that they put their hands against the inside roof of the car. They complied without making any suspicious move. When other patrol cars had arrived, and at least four more officers had the McNairs in their sights, Coffey ordered them to get out with their hands in the air; again they complied peaceably. Both McNairs were handcuffed and arrested--a step that enabled Coffey to search their persons and their car. (He found nothing unlawful.) Tre, who had been the passenger, was released after about 25 minutes, and Victor after an hour. Both were shaken by the experience.

Neither McNair was roughed up, and although the officers' histrionics seem a bit much for a traffic stop, we do not deprecate the risk that confronts the police in these situations. Perhaps Coffey could have argued that an excessive display of force must be distinguished from an excessive use of force. See Gumz v. Morrissette, 772 F.2d 1395, 1408-09 (7th Cir. 1985) (concurring opinion). But he did not move for judgment under Fed. R. Civ. P. 50 either at the close of the evidence or after the verdict. Instead he accepted the jury's conclusion that the conduct violated the fourth amendment and argued that, even so, he is entitled to qualified immunity from civil liability. With this contention the district court agreed, setting aside the verdict and entering judgment for Coffey. The judge relied principally on Wilson v. Layne, 526 U.S. 603, 614-18 (1999), one of many cases implementing the holding of Anderson v. Creighton, 483 U.S. 635 (1987), that until the constitutional right has been made specific enough that a reasonable officer would be aware of his obligations, immunity offers protection.

Public officials must act in the shadow of legal uncertainty. Unlike private actors, who can retire from the fray while legal debate persists, police must protect the public (and themselves) as best they can while coping with complex bodies of law that not only change but also often leave important subjects unresolved for extended periods. When the law is in flux, or when the only applicable norm is a multi-factor balancing test incapable of predictable application, prospective relief is used in lieu of damages. See Auriemma v. Rice, 910 F.2d 1449 (7th Cir. 1990) (en banc); Greenberg v. Kmetko, 840 F.2d 467 (7th Cir. 1988) (en banc).

For many years the analysis of excessive-force claims was beset by legal uncertainty. Some courts analyzed these claims under the fourth amendment, some under the fifth (and, if under the fifth, some for "conscience-shocking" conduct, a standard very hard to pin down in practice). Some courts used a subjective approach, others an objective one. Uncertainty about the legal standard ended, however, with the Supreme Court's opinion in Graham, which adopts an objective approach under the fourth amendment. There may still be uncertainty in the application of that standard to particular situations, but this is not the kind of legal uncertainty that Anderson and Wilson discuss. It is enough that the rule of law be specific in its relation to the facts--and Graham makes the norm as clear as the judiciary can achieve, more specific than rules of tort law under which juries regularly award large damages against surgeons and auto manufacturers.

Still, Coffey insists, he is entitled to immunity unless a reasonable officer in his position would have known that the Graham standard labeled his conduct excessive. Six courts of appeals agree with this proposition. Napier v. Windham, 187 F.3d 177, 188 (1st Cir. 1999); Finnegan v. Fountain, 915 F.2d 817, 822-23 (2d Cir. 1990); Slattery v. Rizzo, 939 F.2d 213, 215-16 (4th Cir. 1991); Brown v. Glossip, 878 F.2d 871, 873-74 (5th Cir. 1989); Landrum v. Moats, 576 F.2d 1320, 1327-28 (8th Cir. 1978); Gold v. Miami, 121 F.3d 1442, 1446 (11th Cir. 1997). We are not among these courts, however. See Frazell v. Flanigan, 102 F.3d 877 (7th Cir. 1996); Titran v. Ackman, 893 F.2d 145 (7th Cir. 1990). Frazell holds that "once a jury has determined under the Fourth Amendment that the officer's conduct was objectively unreasonable, that conclusion necessarily resolves for immunity purposes whether a reasonable officer could have believed that his conduct was lawful." 102 F.3d at 886-87. This conclusion has the support of at least four other circuits. Holt v. Artis, 843

F.2d 242, 246 (6th Cir. 1988); Katz v. United States, 194 F.3d 962 (9th Cir. 1999), cert. granted under the name Saucier v. Katz (No. 99-1977, Nov. 11, 2000); Street v. Parham, 929 F.2d 537, 540, 541 n.2 (10th Cir. 1991); Scott v. District of Columbia, 101 F.3d 748, 759 (D.C. Cir. 1996). The Supreme Court may resolve this conflict in Saucier; unless superseded by higher authority, however, the position articulated in Frazell prevails in this circuit.

This is not to say that qualified immunity is inconceivable in an excessive-force case. See Ellis v. Wynalda, 999 F.2d 243, 246 n.2 (7th Cir. 1993). Judges rather than juries resolve immunity defenses, and a judge might conclude before trial--indeed, before discovery, see Hunter v. Bryant, 502 U.S. 224 (1991)--that the circumstances would not have alerted a reasonable officer that his acts could be deemed an application of excessive force. Moreover, whenever the legal status of a course of conduct is uncertain, damages are inappropriate. Thus if officer Coffey had argued that fright and dismay (= assault), as opposed to unjustified physical contact (= battery), cannot support an excessive-force claim, and if the answer to that contention were legally uncertain, then immunity would be available. That's the upshot of Wilson and Layne, where legal uncertainty about the meaning of the fourth amendment prevailed when the officers acted. But, as we have said, officer Coffey did not make such an argument in the district court and does not advance it now. He takes all legal principles as settled and argues that he is immune from damages liability nonetheless. That seems to us unsound, and not just because Frazell precludes it.

To say that a public official is not exposed to damages even when all legal issues were authoritatively resolved before the conduct occurred would be to make a substantial change in the scope of liability under 42 U.S.C. sec.1983. Cf. Johnson v. Jones, 515 U.S. 304 (1995) (emphasizing the link between immunity and legal uncertainty). Officer Coffey's argument for immunity in factually (as opposed to legally) close cases is fundamentally a request to increase the plaintiff's burden of proof--to insist that the plaintiff show a violation not by a preponderance of the evidence (where the plaintiff can win a close case) but by clear and convincing evidence (where all close cases go to the defendant), perhaps even proof beyond a reasonable doubt. Only then, the argument goes, can we be sure that the public official should have recognized the culpability of his conduct. Yet a sec.1983 case is not a criminal prosecution, and the preponderance standard

applies to civil claims of all sorts. See Grogan
v. Garner, 498 U.S. 279 (1991); Herman & MacLean
v. Huddleston, 459 U.S. 375, 390 (1983). It
should not be changed covertly, through an
immunity defense that imposes a heightened
standard of proof. Cf. Crawford-El v. Britton,
523 U.S. 574 (1998); Leatherman v. Tarrant
County, 507 U.S. 163 (1993). Moreover, the
formula for immunity officer Coffey seeks to use-
-whether a reasonable person would have realized
that his conduct violates established legal
standards-- reintroduces the element of
subjectivity that Graham deliberately removed. An
immunity defense along these lines would be
equivalent to saying that a plaintiff cannot
prevail without establishing both objective and
subjective unreasonableness. Undermining the
holding of Graham in this fashion has little to
recommend it.

  Let us never forget that immunity in sec.1983
cases is a judicial invention. Congress provided
for liability in absolute terms. Public officials
who violate the Constitution or laws must pay;
immunity is anti-textual. The justification for
immunity is that the scope of liability has grown
like topsy since 1871, when sec.1983 was enacted,
and that to carry out what Congress must have
meant a court may depart from what Congress said.
That's a treacherous path for any judge to take,
though history may provide a map. The Supreme
Court has justified immunity doctrines as
approximating of the scope of public-official
liability that prevailed when sec.1983 was
enacted. See Richardson v. McKnight, 521 U.S.
399, 402-07 (1997); Wyatt v. Cole, 504 U.S. 158,
164 (1992). Fair enough in many parts of the law,
but not when dealing with the fourth amendment.
Until this century police faced absolute
liability (in trespass or battery) for their
acts; probable cause and reasonableness were
defenses, and immunity (on top of these defenses)
was unheard of. A principal function of the
fourth amendment was to protect private parties
from overreaching by the police by limiting the
availability of advance judicial approval (that
is, of a warrant) as a defense, to ensure that
citizens could recover unless arresting or
searching officers could establish the
reasonableness of their conduct. See Telford
Taylor, Two Studies in Constitutional
Interpretation 24-47 (1969); Akhil Reed Amar, The
Constitution and Criminal Procedure: First
Principles 3-17, 40-43 (1997). All the great
early opinions defining the scope of freedom from
official intrusion resolve damages claims,
without a hint that if the officers behaved
unreasonably they might still be immune from
liability. Thus a general doctrine of official
immunity, independent of legal uncertainty, is

not only anti-textual but also anti-historical in fourth amendment cases. Perhaps the judiciary would do well to rely more on damages liability and less on the exclusionary rule to enforce the fourth amendment--for damages go to all victims of improper official conduct, while exclusion benefits only the guilty and offers no solace to persons such as the McNairs. We are reluctant to follow an approach that further weakens damages as a deterrent and leads to greater reliance on the exclusionary rule.

The judgment is reversed, and the case is remanded with instructions to enter judgment on the jury's verdict.