NOT RECOMMENDED FOR PUBLICATION

No. 17-6289

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DENNIS C. MCGEE, *as Administrator of the Estate
of Dillon C. McGee, deceased*,

　　　　Plaintiff-Appellee,

v.

THOMAS KNOLTON,

　　　　Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

**FILED**
May 31, 2018
DEBORAH S. HUNT, Clerk

---

**BEFORE:  McKEAGUE, GRIFFIN, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**    Defendant-Appellant, Madison County, Tennessee, Sheriff's Sergeant Thomas Knolton, appeals the district court's denial of his motion for summary judgment based on qualified immunity in this excessive-force case brought by Dennis McGee, the father and Administrator of the estate of Dillon McGee, who was shot and killed by Knolton.  We **AFFIRM**.

I.

On September 26, 2014, Madison County Deputy Ben Moyer took a complaint from two men who asserted that Dillon McGee ("McGee") and another person assaulted them and held them against their will.  Moyer prepared (but did not sign) an affidavit of complaint reflecting the allegations.  Knolton was assigned to the matter and, although he did not speak with Moyer, swore to the veracity of the affidavit Moyer prepared and obtained an arrest warrant for McGee.

Knolton learned that McGee might be at a convenience store and drove with Officer Terry Stewart to that location to serve the warrant.  While en route, another Madison County police

officer told Knolton that McGee was driving a "pewter, gold color Versa" vehicle, and that he may have a gun. The officers were in an unmarked car, and did not activate their emergency lights or sirens when they pulled into the convenience store parking lot. The officers were not in uniform, but Knolton was wearing a bullet-proof vest with the word "deputy" printed on both the front and the back.

When the officers arrived, Stewart noticed McGee's vehicle backed into a parking space at a restaurant adjacent to the gas station. Knolton pulled his vehicle into the restaurant's parking lot and parked his car at an angle in front of the driver-side of McGee's vehicle. Despite Knolton's vehicle, there was room for McGee to drive out of the parking spot by turning his steering wheel hard to the right. McGee was in the driver's seat of his vehicle and Robert Aspiranti was in the passenger seat. Both Knolton and Stewart exited their vehicle and immediately drew their weapons.

The rest of the facts are disputed. Stewart and Knolton testified that they identified themselves as law-enforcement officers by yelling "Sheriff's Department" and "hands, hands, let me see your hands." But Aspiranti testified that he did not hear anyone identify himself as a law-enforcement officer; and an eyewitness, Jeffrey Haynes, who was in the convenience store parking lot, also testified that he did not hear either officer identify himself. Although Knolton's vest had "deputy" written on it, the lettering may have been blocked by Knolton's hand and firearm because he exited the vehicle and immediately drew his weapon.

Knolton contends that he was directly in front of McGee's vehicle when McGee "gunned the vehicle" toward him. However, testimony from other eyewitnesses and Plaintiff's ballistic expert suggests that Knolton was not directly in front of McGee's car, that McGee turned his steering wheel all the way to the right, away from Knolton and toward the exit, and that he drove

at a slow speed. As McGee's car moved forward, Knolton fired two shots through the front windshield. Neither of these shots struck McGee, who continued to turn the vehicle to the right. Knolton testified that he continued to stand in the path of McGee's vehicle and fired three more shots into the vehicle because he feared for his life, but he did not remember whether there were two sets of shots. Knolton stated that when the car moved past him, he stopped firing.

In contrast, an eyewitness testified that Knolton walked sideways, or "sidestepped," more than twenty feet to keep up with McGee's car and fired three more shots into the driver-side window from the side of the car as it moved past Knolton. Plaintiff's ballistic expert's analysis supports this testimony. Several witnesses testified that there was a gap in time between the first two shots into the windshield and the second set of three shots into the driver-side window. The fifth and final shot struck and killed McGee. No gun was found in McGee's car.

II.

McGee's father was appointed Personal Representative and Administrator, and brought this action against Knolton, Sheriff John Mehr, and Madison County. The complaint alleges violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 as well as state-law claims for assault, battery, intentional infliction of emotional distress, and outrageous conduct. The district court granted summary judgment in favor of Mehr and Madison County, but denied Knolton's motion:

> [T]he parties have presented conflicting evidence as to the spatial relationship of Knolton and Dillon McGee when Knolton fired the fatal shot. Knolton testified that he shot only when the vehicle was coming toward him, and ceased firing once he believed he was out of harm's way. McGee's expert witness testimony shows that Dillon McGee was shot in the lower left back, which is consistent with the shooter firing perpendicular to the driver's side door. McGee argues that the bullet's entry and exit points prove that Knolton fired the fatal shot while standing perpendicular to the vehicle, when he was out of harm's way. . . . Thus, both parties have presented conflicting

evidence as to the spatial relationship of Knolton and Dillon McGee when Knolton fired the fatal shot.

The parties' competing evidence as to spatial relationship creates a genuine issue of material fact, which precludes our resolution of McGee's Fourth Amendment claim as well as Knolton's qualified immunity claim. If Knolton's theory and evidence are correct, Dillon McGee presented a threat of serious physical harm to Knolton or others when Knolton fired the fatal shot. If that is the case, then Knolton's action may have been reasonable under the circumstances. On the other hand, if McGee's theory and evidence are correct, Dillon McGee did not present a threat of serious physical harm when Knolton fired the fatal shot. If that is the case, Knolton's action would not have been reasonable under the circumstances, in violation of Dillon McGee's Fourth Amendment rights. Accordingly, there is a genuine issue of material fact underlying the legal determination of whether Knolton violated Dillon McGee's constitutional rights, pursuant to the first element of the Saucier inquiry.

[Order, R.202 at PID 6018–19] (internal record citations omitted).

Knolton timely appealed.

III.

We review de novo a district court's denial of summary judgment on the grounds of qualified immunity. *Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 402 (6th Cir. 2015). McGee bears the burden of demonstrating that Knolton is not entitled to qualified immunity. *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). However, we view the facts and any inferences reasonably drawn from them in the light most favorable to McGee. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

As a threshold matter, we address McGee's claim that we have no jurisdiction to entertain Knolton's interlocutory appeal. "The denial of a summary judgment motion usually presents neither a final appealable order nor an appealable interlocutory order." *Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008). However, an exception to that rule applies when a district court

rejects a defendant's assertion of the qualified immunity defense "to the extent that the appeal presents a question of law and does not require us to resolve disputes of material facts." *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010) (citations omitted). Knolton "must be willing to concede the plaintiff's version of the facts." *Id.* (citing *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). We thus exercise our jurisdiction to hear Knolton's appeal accepting McGee's version of the facts. "However, where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000) (quotation and ellipses omitted).

IV.

Government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether a government official is entitled to qualified immunity, we analyze (a) whether the facts, when taken in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right; and (b) if so, whether that constitutional right was clearly established such that a "reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation and internal quotation marks omitted), *overruled on other grounds by Pearson*, 555 U.S. at 229.

On appeal, Knolton addresses only the first *Saucier* prong, and argues that his conduct did not violate the Fourth Amendment. In Fourth Amendment claims, we apply "the objective reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Jefferson*, 594 F.3d at 460–61 (citation and internal quotation marks omitted). "[T]he use of deadly force is only

constitutionally permissible if 'the officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others.'" *Livermore,* 476 F.3d at 404 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

Although, as a matter of law, "an officer cannot shoot a non-dangerous fleeing felon," *Foster v. Patrick*, 806 F.3d 883, 889 (6th Cir. 2015) (citation omitted), "whether a suspect is 'nondangerous' is based on the facts known to the officer at the time of the incident." *Jefferson*, 594 F.3d at 461. Our reasonableness analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). However, "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Smith v. Cupp*, 430 F.3d 766, 776 (6th Cir. 2005) (quoting *Garner*, 471 U.S. at 11).

We focus on the following factors to analyze whether there is an objectively reasonable belief that the suspect poses an imminent threat of serious physical harm: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007) (citation omitted). Ultimately, our analysis turns on whether Knolton had an objectively reasonable belief that McGee posed an imminent threat of serious physical harm to him when he shot McGee. *Foster*, 806 F.3d at 887.

The district court correctly determined that genuine issues of material fact precluded summary judgment, including: (1) the direction and speed at which McGee drove his vehicle out of the parking spot; (2) Knolton's position in relation to the vehicle when he fired his weapon; and

(3) whether there was a pause between the first set of shots—two through the windshield—and the second set of shots—three through the driver-side window.

Knolton points to one undisputed fact that he argues entitles him to qualified immunity: the short time between his visual identification of McGee's vehicle and Stewart radioing "shots fired." Knolton argues that because he faced a "tense and highly uncertain" situation and "only had mere seconds to make a life or death decision," [Reply Br. at 2–3], his conduct was reasonable as a matter of law. However, eyewitnesses testified that there was a pause of several seconds between Knolton's first two shots and his second set of three shots. Even assuming arguendo that Knolton's initial shot was reasonable, that does not mean his fifth shot was as well. *See Claybrook v. Birchwell*, 274 F.3d 1098, 1103 (6th Cir. 2001) (describing the temporally segmented analysis required for excessive force claims in this circuit); *see also Dickerson v. McClellan*, 101 F.3d 1151, 1162 n.9 (6th Cir. 1996) (quoting *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993)) ("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity."). Additionally, "[e]ven a split-second decision, if sufficiently wrong, may not be protected by qualified immunity." *Bouggess*, 482 F.3d at 894.

We lack jurisdiction to resolve factual disputes, *Romo v. Largen*, 723 F.3d 670, 674–75 (6th Cir. 2013), and must view the facts in the light most favorable to McGee: i.e., that the officers did not identify themselves as law enforcement; that McGee was at all times turning to the right, and away from Knolton, to exit the parking lot; and that McGee was driving slowly as Knolton walked twenty-three feet beside the vehicle and then shot McGee through the side window. If the jury believes Plaintiff's version of the facts, Knolton's conduct violated the Fourth Amendment. Therefore, the district court did not err in denying summary judgment. *See Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998).

V.

For the foregoing reasons, we **AFFIRM**.