NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0360n.06

Case No. 24-5820

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 23, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CHRISTOPHER SCOTT STERUSKY, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| DETRICK COOPER, | ) ) | |
| Defendant-Appellant. | ) | OPINION |

Before: BOGGS, GRIFFIN, and NALBANDIAN, Circuit Judges.

BOGGS, Circuit Judge. This Fourth Amendment use-of-deadly-force case began rather innocuously when a police officer noticed that an idling car parked in front of a residential complex lacked a government-issued license plate. When the officer approached the car, the driver received permission to exit the still-idling vehicle, but he failed to provide the officer with his birth date, birth name, or photo identification. Eventually, the officer called for backup, the situation escalated, and the driver, who had been asking for permission to leave (by car or on foot), attempted to get back into his car. The officer grabbed the driver's arm, a struggle ensued, and the officer's body-worn camera was knocked off. All that's left is an audio record of the altercation, which lasted approximately 39 seconds and ended with the officer firing 17 shots and killing the driver who, by this time, was sitting in the driver's seat.

The driver's estate brought claims under 42 U.S.C. § 1983 for violation of the Fourth Amendment right to be free from excessive force. The district court denied the officer's motion for summary judgment and qualified immunity on the grounds that there were disputed issues of material fact surrounding the shooting. After determining that we have jurisdiction to hear this interlocutory appeal, we hold that the officer is not entitled to qualified immunity or summary judgment and affirm the district court.

## I.  Background

### A.  Facts

On December 11, 2021, Appellant Detrick Cooper, a patrol officer with the Elizabethtown Police Department in Elizabethtown Kentucky, had just finished a wellness check at an apartment complex when he noticed a parked vehicle with a non-government-issued rear license plate idling nearby.[1] Officer Cooper, wearing his body camera, got out of his police vehicle, approached the parked car—which had dark tinted windows—and asked the occupant, Chris Sterusky, for photo identification. Sterusky handed Officer Cooper a paper document that had Sterusky's Moorish name, Samson El Khabid Mudamir.

Sterusky said that he needed to get his shoes. Leaving the car running, he got out with Cooper's permission, closed the driver-side door, and walked to the trunk, which he opened to get his shoes. Officer Cooper asked if he had any weapons, to which Sterusky answered, "No." Sterusky informed Officer Cooper that he did not have a social security card and again identified himself as Samson El Khabid Mudamir. Sterusky repeatedly asked for permission to leave, but Officer Cooper explained that he needed a valid driver's license and license plate to legally operate

---

[1] The license plate was red with a green star in the middle, a graphic frequently used as a symbol of being a Moorish sovereign citizen.

his vehicle. Sterusky then said that he could leave on foot. Officer Cooper asked for more information, including Sterusky's birth name and birth date, which Sterusky would not provide: "I don't have one anymore, sir." In response to a question about his driver's license Sterusky responded, "I'm not a member of the corporation, sir." When Officer Cooper asked about registering his vehicle Sterusky replied "I don't have to."

Sterusky grew increasingly anxious, and again asked if he could walk away from the encounter. Officer Cooper then used his handheld radio to call for back up, prompting an exasperated and fretful reaction from Sterusky. Sterusky began pleading with Officer Cooper, repeating that he did not intend to cause any trouble, and asked permission to sit in his vehicle, which Officer Cooper denied, prompting Sterusky to accuse Cooper of "playing with" him. Sterusky then asked permission to turn off his vehicle, which Officer Cooper also denied, but Sterusky this time opened the car door. Officer Cooper attempted to restrain Sterusky, grabbing his left arm, at which time Officer Cooper's body-worn camera fell off his uniform.

A struggle ensued that lasted 39 seconds. Only body-worn camera audio of the interaction was captured because the camera came off Cooper's chest in the struggle. Sterusky can be heard pleading for permission to sit down, stating that it had been a long morning, and asking why Officer Cooper was doing this to him. Then, Sterusky twice said, "Fuck it." Cooper yelled a few seconds later and is heard firing seventeen shots. Between the time Cooper screamed and the first shot was fired, 2.5 seconds passed. It took Cooper less than six seconds to unload all seventeen bullets.

Elizabethtown Police Officer Ryan Slaubaugh arrived on the scene shortly after the shots were fired. As he ran towards the scene, he heard Officer Cooper state over the radio, "He pulled a knife on me and tried to stab me in my chest." Sterusky's car was slowly rolling backwards and Cooper repeatedly yelled for the driver to stop the car, but the car continued rolling until it hit a

parked car. Officer Slaubaugh approached the car, broke the tinted passenger window, and saw Sterusky's body slumped in the driver's seat. Emergency medical services arrived shortly thereafter and determined that Sterusky was dead.

After the shooting, the Kentucky State Police (KSP) determined that Sterusky had been struck by seven bullets, resulting in eight total bullet wounds. KSP also found Cooper's body-warn camera on the driver's seat under Sterusky's body.[2] KSP recovered a red pen lying on the floor, inside the car on the driver's side floor. A steak knife lay on the passenger seat, handle toward the driver, lying near a plastic food container. The KSP crime lab noted that Officer Cooper's uniform, which was dirty with his nametag askew, had three small cuts on the outside of the breast pocket. There were no corresponding cuts on the inside of the pocket, although a pen in that pocket had markings on it that were consistent with the pen being struck by an object.

### B. Procedural History

Sterusky's father initatiated this action in state court and Officer Cooper removed it to federal court, where Sterusky's estate filed a § 1983 claim against Officer Cooper for violating Sterusky's Fourth Amendment rights to be free from excessive force. Officer Cooper moved for summary judgment based on qualified immunity. Lacking a video record, the parties disputed what happened in the 39 seconds between Officer Cooper grabbing Sterusky by the arm and when he fired 17 shots. There was no witness to the shooting other than Officer Cooper.

The district court denied summary judgment based on its determination that there were material factual disputes over what happened. Officer Cooper's version of events was that Sterusky tried to kill him with a knife and that he was therefore justified in using deadly force. Officer

---

[2] In fact, after the shots were fired, Cooper's body-worn camera video returns briefly, showing the back of Sterusky's torso leaning forward and then slumping back on top of the camera, with his body again obscuring any further video recording.

Cooper said that, after grabbing Sterusky's arm, he used his right hand to hold Sterusky, who by this time was sitting on the ground between the open driver's door and the vehicle. Sterusky slapped Cooper's hands away and, as Cooper slipped to the ground, grabbed a steak knife from the driver's side door pocket, and "aggress[ed]" towards Officer Cooper with an "evil look in his eye." Sterusky attempted to stab Officer Cooper twice in the neck, but the blade landed on his chest instead. Sterusky continued to approach Cooper, who was still on the ground, with "that look" and Cooper began firing his gun. For at least five of Cooper's seventeen shots, the car door was open, and at some point Sterusky got, or fell, into his car and the driver's door closed. Cooper then radioed to police dispatch, stating that he had fired his weapon and reporting that "he pulled a knife out on me and tried to stab me in my chest." Cooper ran for cover, and Sterusky's vehicle began slowly moving backwards.

In contrast, Plaintiff—relying on circumstantial evidence, the reports of his expert witnesses, and the KSP Investigation Report—maintains that the use of deadly force by Officer Cooper was not warranted because Sterusky did not pose a threat to Cooper's safety. Plaintiff contends that when Officer Cooper grabbed Sterusky, they were both standing up before Sterusky broke free, got into his car, and Officer Cooper fell forward, face first onto the ground, which disturbed his left breast pocket. Then Sterusky "shifted the car into gear" and began to move backwards. At this point, Officer Cooper began firing into the car to prevent Sterusky from escaping, with the first shot occurring before the car door was completely closed. The car rolled backwards slowly as Officer Cooper continued to fire, standing adjacent to the vehicle and not in its path of travel.

Based on these two different versions of what happened, the district court ruled that material questions of fact precluded summary judgment on the excessive-force claim and denied Officer Cooper qualified immunity. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995).

## II. DISCUSSION

### A. Standard of Review

We review de novo a district court's denial of summary judgment on qualified-immunity grounds. *Adams v. Blount County*, 946 F.3d 940, 947 (6th Cir. 2020). Qualified immunity protects government officials performing discretionary functions from suit unless 1) they violated a federal statutory or constitutional right, and 2) the unlawfulness of their conduct was clearly established at the time of the violation. *See id.* at 947–48. District courts may decide these two elements in either order but must take the facts in the light most favorable to the plaintiff. *Id.* at 948.

### B. Jurisdiction

Sterusky makes a strong argument that we lack jurisdiction to hear this case. Typically, appellate courts lack jurisdiction to hear interlocutory appeals from denials of summary judgment, but an exception exists for the review of qualified immunity. *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985); 28 U.S.C. § 1291. However, this qualified-immunity exception is a narrow one, limited to purely legal issues. *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018). An order denying a defendant summary judgment in a qualified-immunity case that "determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial" is not appealable. *Johnson*, 515 U.S. at 313.

Under *Johnson*, we defer to the district court's determination of arguable facts and a defendant who is challenging the denial of qualified immunity "may not challenge the inferences that the district court draws from those facts, as that too is a prohibited fact-based appeal." *Adams*,

946 F.3d at 948 (citations omitted). In short, when "the legal question . . . is completely dependent upon which view of the facts is accepted by the jury," the district court cannot grant a police officer immunity from a deadly-force claim. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (ellipses in original) (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989)).

To avoid *Johnson*'s bar to this appeal, in briefing and at oral argument, Officer Cooper's counsel stipulated and conceded for purposes of this appeal that: 1) Sterusky used an object other than a knife (such as a pen) or, "in the alternative, Sterusky was unarmed"; 2) "Sterusky was inside his car when he was shot"; 3) Sterusky was fleeing when he was shot; 4) any threat of deadly force from Sterusky "had abated when shots were fired"; and 5) "Cooper misinterpreted Sterusky's actions."

Officer Cooper's factual stipulations on appeal erase the factual disputes on which the district court denied summary judgment and which would have denied us jurisdiction. In short, Cooper's stipulations overcome *Johnson* and give us jurisdiction.

## C. Qualified Immunity

Given these concessions, we now decide whether Officer Cooper is entitled to qualified immunity. Individuals "have a right not to be shot unless they are perceived as posing a threat to officers or others," *King v. Taylor*, 694 F.3d 650, 664 (6th Cir. 2012) (citations omitted), and deadly force "may be used only if the officer has probable cause to believe that the suspect poses a threat of severe physical harm" to the officer or others. *Adams*, 946 F.3d at 949 (quoting *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015)). In excessive-force cases, qualified immunity "is difficult to determine on summary judgment because liability turns upon the Fourth Amendment's reasonableness test." *Sova*, 142 F.3d at 902. In determining reasonableness, courts must weigh 1) if a crime was committed, the severity of that crime; 2) "whether the suspect poses an immediate

threat to the safety of the officers or others"; and 3) whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Our "inquiry into the reasonableness of police force requires analyzing the 'totality of the circumstances.'" *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025) (quoting *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 n.* (2017)). This "demands 'careful attention to the facts and circumstances' relating to the incident, as then known to the officer," *Id.* (quoting *Graham*, 490 U.S. at 396), and requires a "fact-dependent and context-sensitive approach" in assessing the objective reasonableness of a police shooting. *Id.* at 1359. To that end, "the history of the interaction . . . may inform the reasonableness of the use of the force." *Id.* at 1358.

Here, we must analyze the totality of the circumstances considering Cooper's concessions, particularly his concession that Sterusky did not use a knife or, in the alternative, was unarmed. This circuit has held that police may still be justified in using deadly force on a suspect who had been actively threatening others with a dangerous weapon (guns or knives) but, unbeknownst to police, ultimately dropped the weapon and that the danger had already abated.[3] And we've said that force might be justified if the officer thinks a person is armed but actually is not (holding a phone, for example). *E.g., Moore v. City of Memphis*, 853 F.3d 866, 871–72 (6th Cir. 2017). ("The plaintiffs argue that a genuine dispute exists as to whether Moore pointed a gun at [the] Officer . . . [the officer] might have seen the phone in Moore's hand and mistakenly thought it was a gun. Be that as it may, however, the relevant question is not whether Moore in fact had a gun in his hand, but whether [the officer] reasonably thought that Moore did.").

---

[3] Qualified immunity was found in *Whitlow v. City of Louisville*, where the suspect pointed an unloaded gun at police and refused to drop it. 39 F. App'x 297, 306–07 (6th Cir. 2002); *see also Newcomb v. City of Troy*, 719 F. Supp. 1408, 1415–16 (E.D. Mich. 1989) (suspect who had pulled knife on food-mart employees had put knife in his pocket, but police mistakenly believed that when he tripped forward that he was trying to harm a nearby employee).

But, based on the historical circumstances of the encounter, an officer must have "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

> If the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given. Absent such probable cause, however, a police officer may not seize a fleeing felon by employing deadly force.

*Ibid.* (citations omitted).

Cooper's "unarmed" concession lessens the objective reasonableness of his use of deadly force. Logically, if Cooper knew that Sterusky was unarmed, Sterusky would not have posed a threat of serious harm or injury, and it would not have been reasonable for Officer Cooper to use deadly force. Even if we generously interpret the "unarmed" concession as inartful writing, and we limit the concession to Sterusky not being armed with a traditional weapon (such as a knife), this leaves open the possibility that Sterusky could have posed a significant threat to Officer Cooper's safety by using a non-traditional weapon (such as a pen).

But, even if we assume that Cooper is only conceding that Sterusky was "unarmed" with a traditional weapon, Cooper also conceded that Sterusky 1) was in his car when he was shot, 2) was fleeing trying to get away from Cooper, and 3) that the threat of deadly force had abated. These concessions, taken together, make Cooper's use of force unreasonable. If Sterusky was trying to flee in his car and was not threatening Office Cooper, Officer Cooper's use of deadly force is similar to Officer Mattingly's who was denied qualified immunity when he shot a fleeing suspect who had broken away from the officer's grasp. *Mattingly*, 482 F.3d at 887–89.

Application of the *Graham* factors lead us to the same conclusion. First the crime—lack of a driver's license and vehicle registration—was not severe. Sterusky was minding his own business, sitting in a parked car, and posing a threat to no one. Second, Sterusky did not pose an immediate threat to Officer Cooper. He did not engage in any aggressive behavior until Officer Cooper physically grabbed him by the arm. Officer Cooper hit his head because he slipped, not because Sterusky violently pushed him to the ground. Sterusky did not try to kill Officer Cooper. Third, Sterusky was trying to leave the scene—either on foot or by car. Officer Cooper admits that he faced no direct danger of Sterusky using the vehicle as a weapon and Sterusky had not been driving dangerously, recklessly, or threatening the safety of others.

### III. CONCLUSION

Officer Cooper is not entitled to qualified immunity on the record. The district court is **AFFIRMED**.